UNITED STATES DEPARTMENT OF LABOR
OFFICE OF WORKERS' COMPENSATION PROGRAMS

| | | |
|---|---|---|
| JIMMY COOPER, | ) | |
| Claimant, | ) | |
| vs. | ) | |
| AUSTAL USA, LLC, | ) | OWCP NO.: 06-303574 |
| Employer, | ) | ALMA NO.: 4769218 |
| AMERICAN LONGSHORE MUTUAL ASSOCIATION, LTD., | ) ) | |
| Group Self-Insurer. | | |

## SETTLEMENT AGREEMENT AND APPLICATION FOR APPROVAL OF AGREED SETTLEMENT UNDER LHWCA SECTION 8(i)(1)

The above-named parties make the following stipulation and application for approval of an agreed compromise settlement under Section 8(i)(1) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. Section 908(i)(1), with all parties retaining the right of rescission during the pre-approval period:

### I. Summary of the Facts of the Case

A. **Description of the Incident**: On May 6, 2014, Claimant, a logistics associate employed by Austal USA, LLC ("Employer"), at its shipyard in Mobile, Alabama, reported that he passed out due to hypoglycemia and injured his right arm.

Among other things, there are also disputes between the parties as to whether this claim is covered by the LHWCA, the Alabama Workers' Compensation Act ("AWCA") or both, whether Claimant sustained a compensable injury, the nature and extent of disability, etc. At all material times, the American Longshore Mutual Assn., Ltd. ("ALMA"),

Exhibit A

provided LHWCA coverage for Employer. The parties intend to enter into a full and final compromise settlement of all claims made or which could have been made under both statutes as described below. More specifically, after receiving the District Director's approval of this agreement, the parties will file a supplemental petition asking an Ombudsman with the Alabama Department of Labor to approve the settlement of Claimant's entitlement to benefits under the AWCA for additional payments totaling $500.00.

    B.    <u>Description of the Injury</u>: Right wrist sprain.

    C.    <u>Summary Description of the Medical Care</u>: Claimant was initially treated at Springhill Medical Center for hypoglycemia. On May 7, 2014, Claimant followed up with his primary care physician, Dr. Edward Carlos, who had been treating Claimant for numerous health issues, including diabetes. Dr. Carlos released Claimant to return to work the following day with no restrictions. On May 12, 2014, Claimant was seen by orthopedist, Dr. Herbert Allen, who diagnosed right wrist sprain, placed Claimant's wrist in a splint, prescribed medication, and released Claimant to return to work the following day with no use of the right wrist for four weeks. An MRI of the right wrist on June 6, 2014, was normal, and Claimant received no further treatment for his wrist but did continue treating with Dr. Allen for bilateral knee pain unrelated to Claimant's work activities. The parties do not think Claimant will require further medical treatment for the May 6, 2014 incident.

    D.    <u>Summary of Compensation Paid</u>: Having controverted the claim on the grounds that Claimant's hypoglycemia was personal in nature and unrelated to work

2

activities, Employer/ALMA have paid no compensation benefits to Claimant. For the purposes of this settlement, the parties stipulate that the AWW is $677.21.

## II. Summary of the Settlement

A.   Terms of the Settlement:   In an effort to resolve the disputes and controversies existing between them, and in lieu of determining, among other things, whether LHWCA benefits are due, the Claimant and the Employer/ALMA hereby stipulate and agree as follows:

1.   Subject to receiving approval of this proposed settlement, ALMA shall pay and the Claimant shall accept the sum of Three Thousand Three Hundred Thirty-Eight and no/100ths Dollars ($3,338.00) in full, final and complete compromise settlement of any and all claims against Employer/ALMA arising out of or in connection with the Claimant's accident, injury, and disability in issue, including but not limited to claims for temporary total, temporary partial, permanent total and/or permanent partial disability compensation, past and future medical benefits, and any and all other benefits that might be held due and owing from Employer/ALMA to or on behalf of the Claimant under the LHWCA for said accident. Of the foregoing sum, the parties allocate $2,588.00 to the compensation settlement and $750.00 to the medical settlement. Upon receipt of the District Director's approval of this settlement, the parties will seek approval of the settlement of Claimant's entitlement to benefits under the AWCA for additional payments totaling $500.00 ($250.00 compensation/$250.00 medicals) by an Ombudsman of the Alabama Department of Labor. Claimant agrees that, against any liability for compensation benefits under the LHWCA, Employer/ALMA are entitled to credit for benefits paid under the AWCA. Considering the payments to be made under the AWCA

settlement brings the total consideration for settlement of both claims to $3,838.00, of which sum the parties allocate $2,838.00 toward the compensation settlements and $1,000.00 toward the medical settlements.

2.  Claimant is not presently represented by counsel. Claimant confirms that he is aware he has the right to be represented by an attorney but does not require legal representation. As noted on the copies of e-mail messages attached hereto, Claimant's most recent attorney, Dwain Denniston, Jr., has withdrawn from law practice and has waived any claim to fees or expenses in this matter. Claimant has been advised that Employer/ALMA have reached a separate agreement to settle the claim to fees and expenses made by Michael G. Huey for payments to Mr. Huey totaling $2,000.00. Claimant does not object to that separate agreement between Mr. Huey and Employer/ALMA.

B.  <u>Reasons for Settlement</u>: This is a disputed claim in which significant controversies exist concerning whether Claimant sustained a compensable injury, and, if so, whether Claimant's injury falls under the jurisdiction of the AWCA or the LHWCA or both, whether Claimant has any entitlement to benefits, whether for temporary or permanent disability, and, if so, the nature and extent of disability and the applicable compensation rate, and whether, in light of Claimant's return to full duty employment, whether any future need for medical treatment will be reasonably related to the subject injury or some future work-related injury or aggravation. It is felt by the parties that, in light of the controversies between them and the uncertainties and delays of litigation, a compromise settlement is appropriate.

C.  <u>Claimant's Date of Birth</u>: Claimant was born on [birthdate redacted]

D.      <u>Claimant's Work Status and History</u>:  Claimant continued to work for Employer until January 27, 2015, when he was terminated for absenteeism.  Since then, Claimant has worked periodically through temporary services and intends to seek full time employment with employers other than Austal USA after this settlement is approved.

E.      <u>Medical Reports</u>:  See attached chart notes and reports of Claimant's examining or treating physicians.

F.      <u>Adequacy of Settlement Amount</u>:  Because the consideration payable for compensation under the combined settlements would provide the equivalent of over 6.28 weeks' compensation at the TTD rate in a lump sum and the remainder, $1,000.00, will provide sufficient funds for Claimant to see his doctor and purchase medications, if necessary in the future, the parties feel that the settlement adequately meets Claimant's present and future financial needs and represents a reasonable compromise of the issues between the parties to this disputed claim.

G.      <u>Medical Benefits</u>:  Claimant's entitlement to medical benefits, if any, shall terminate upon approval of the settlement.  ALMA has paid or will pay all authorized medical expenses incurred to date.  Those expenses total $525.00, all paid during 2014.  Claimant does not presently have a collateral source of medical benefits, is seeking full time employment by an employer other than Austal USA, LLC, providing medical coverage.

H.      <u>Statement Concerning Duress, Finality and Cooperation</u>:  Claimant attests that this settlement has not been procured by duress and that he has not relied on any representations by the representatives of the Employer/ALMA in reaching his decision to settle the claim.  Further, Claimant certifies he was sober when this was executed and

understands its significance and finality even if he later determines that the nature and extent of his injuries and disabilities are greater than or different from what he presently believes them to be. Claimant agrees to cooperate with Employer/ALMA and shall take such action as may be reasonably necessary to conclude this global settlement agreement.

    I.    <u>Social Security/Medicare Statements</u>:  Claimant represents to the Department of Labor and to the parties he is not eligible for Medicare benefits and does not expect to qualify for such benefits within thirty months. Accordingly, the parties do not think that the Medicare Set-aside regulations apply to this matter.

    J.    <u>Global Settlement</u>:  The parties stipulate and agree they intend to settle all issues and claims between themselves whether arising under the AWCA, the LHWCA, or any other statute or law and this agreement is conditioned on receiving approval of the settlement under both the AWCA and the LHWCA. The Claimant and the Employer/ALMA each shall have the right to withdraw their consent to the global settlement before the settlement is approved by both the District Director and the Ombudsman by giving written notice to the U. S. Department of Labor and the Alabama Department of Labor and to the other party.

    K.    <u>Designation of Delivery Place</u>:  Claimant agrees that the ten-day delivery deadline under the Act will be satisfied and that no section 14(f) assessment will be due upon presentation of evidence of timely issuance of settlement checks by Carrier and by delivery, or attempted delivery, of said checks by the United States Postal Service or by an express delivery service, by the final day of the deadline at the following address (check one):

————   Claimant's address as set out under his signature below; or

✗   Other (please print): Hold for pick-up at UPS office - Wolf Ridge Road Mobile AL

WHEREFORE, the premises considered, the Claimant and the undersigned counsel for the Employer/ALMA hereunto set their hands and seals on the respective dates set forth following their signatures.

_____ (SEAL)      4/17/15
Jimmy Cooper                        Date

Address/phone redacted

STATE OF ALABAMA  :
COUNTY OF MOBILE  :

On this 17th day of April, 2015, before me appeared JIMMY COOPER, known by me to be the person who executed the foregoing SETTLEMENT AGREEMENT and APPLICATION FOR APPROVAL OF AGREED SETTLEMENT, and who acknowledged he executed the same voluntarily of his own free will, with full knowledge and understanding of the contents, and for the sole consideration expressed.

Susan M. Jenkins
NOTARY PUBLIC
Mobile County, Alabama

My Commission Expires: [notary seal: SUSAN M. JENKINS, MY COMMISSION EXPIRES March 3, 2019, NOTARY PUBLIC STATE OF ALABAMA]

_____(SEAL)        April 17, 2015
Douglas L. Brown                        Date
Brady Radcliff & Brown LLP
Post Office Box 1668
Mobile, Alabama 36633-1668
Telephone: 251.405.0073
Attorney for Employer/ALMA