IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 18-0416-CG-N |
| AUSTAL USA, LLC, | ) ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant's motion for judgment on the pleadings as to claims for individual relief and jury demand (Doc. 26), Plaintiff's opposition thereto (Doc. 31), and Defendant's reply (Doc. 34). For the reasons explained below, the Court finds that judgment on the pleadings should be denied.

**I. BACKGROUND**

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this action alleging that Defendant Austal USA, LLC ("Austal") discriminated against Jimmy Cooper by failing to provide him leave as a reasonable accommodation in violation of the ADA. (Doc. 1). According to the complaint, Mr. Cooper began working at Austal in 2007 as a Warehouseman. (Doc. 1, ¶ 14). In 2008, Cooper was diagnosed with Type II Insulin-Dependent Diabetes which sometimes required him to be absent or late to work or to need to leave work early or on short notice. (Doc. 1, ¶ 15). In late 2013 or early 2014, Cooper became a Logistics Associate and received additional duties which resulted in increased physical stress that made it more

difficult for Cooper to control his blood sugar levels and resulted in an increased number of days Cooper was tardy or absent. (Doc. 1, ¶ 17). On May 6, 2014, Cooper's blood sugar spiked and he lost consciousness at work and injured his wrist. (Doc. 1, ¶ 18). Following the incident, Cooper was absent from work several days due to his disability. (Doc. 1, ¶ 18). Cooper also missed time from work in December 2014 due to his blood sugar becoming elevated. (Doc. 1, ¶ 19). Austal terminated Cooper on or about January 27, 2015 pursuant to Austal's attendance policy. (Doc. 1, ¶ 21). On March 5, 2015, Cooper filed a charge of discrimination with the EEOC alleging violations of the ADA by Austal. (Doc. 1, ¶ 7, Doc. 26-2). The EEOC filed a complaint in this Court seeking injunctive relief regarding Austal's general attendance policies as well as relief specific to Cooper, to make Cooper whole by providing back pay, front pay, compensation for Cooper's pecuniary losses, reinstatement, and punitive damages.

Austal moved for judgment on the pleadings asserting that Cooper waived any right to recover individual relief from Austal via releases he executed on April 17, 2015. (Doc. 26). Austal attached copies of the releases to its motion. The first release, titled "SETTLEMENT AGREEMENT AND APPLICATION FOR APPROVAL OF AGREED SETTLEMENT UNDER LHWCA SECTION 8(i)(l)" (hereinafter "LHWCA Settlement Agreement"), states that the parties agree "to settle all issues and claims between themselves whether arising under the AWCA, the LHWCA, or any other statute or law..." (Doc. 26-1, ¶ J). The USDOL approved the LHWCA Settlement Agreement on May 7, 2015. (Doc. 26-4). The second

release, titled "AGREEMENT AND GENERAL RELEASE" (hereinafter "General Release"), included the following:

> Employee hereby voluntarily resigns any employment relationship he may have with the Company and waives any right to employment or re-employment with the Company and also agrees he will not in the future apply for employment or re-employment with the Company, either directly or indirectly.
>
> * * * *
>
> As part of the Settlement, Employee also waives and releases any and all rights or claims, whether presently known or unknown, he may have against the Company as of the date of his signing this Agreement, including any rights or claims which arise out of or are related in any way to his employment with, or separation of employment from, the Company. This release includes, but is not limited to, all rights or claims which arise under federal, state, or local law for discrimination, including all claims made or which could have been made in EEOC Charge 425-2015-00523, ...
>
> Notwithstanding anything suggested herein to the contrary, nothing in this Agreement shall be construed to interfere with the Employee's rights under either the Older Workers Benefit Protection Act or Section 7 of the National Labor Relations Act; to prohibit Employee from filing a charge with or participating in any investigation or proceeding by any federal, state or local agency charged with enforcement of any law, though under such circumstances Employee agrees to waive his right to recover monetary damages or individual relief in any charge, complaint or lawsuit filed by him or by anyone else on his behalf; or to waive any claims arising after the date of execution of this Agreement, including but not limited to claims for breach of this Agreement, or to any claims that may not be released as a matter of law.

(Doc. 26-3, ¶¶ 1-3).

## II. DISCUSSION

### A. Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the

pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." The pleadings are closed for purposes of Rule 12(c), "when a complaint and answer have been filed." *Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist.*, 631 Fed. Appx. 851, 853 (11th Cir. 2015). Pleadings include complaint, answers, and affirmative defenses. FED. R. CIV. P. 7(a). A Rule 12(c) motion "provides 'a means of disposing of cases when ... a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings....' " *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2004)) (emphasis in original).

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss. *Thomas v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2019 WL 1573702, at *1 (M.D. Ala. Apr. 11, 2019) (citation omitted). In "determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

## B. Consideration of Extrinsic Documents

Austal contends judgment on the pleadings should be granted based on the LHWCA Settlement Agreement and the General Release. Generally, the Court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. FED. R. CIV. P. 12(d).  However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c).  Also, the Court may consider an extrinsic document if it is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citations omitted).  "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted).

The releases here were not attached to any pleading. The General Release was reportedly submitted by Austal to the EEOC on May 20, 2015 and Austal contends it is part of the EEOC's administrative record. The Complaint references the EEOC Charge but does not mention any release or settlement of Cooper's claims. Courts have found that an EEOC charge attached to a motion to dismiss may be considered where it was central to a complaint brought by a charging party and the authenticity of the charge was not disputed. *See e.g. Cochran v. Southern Co.*, 2015 WL 3508018, at *2 n.4 (S.D. Ala., June 3, 2015) (citing *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)); *see also Ramsey v. Greenbush Logistics, Inc.*, 2017 WL

5

6492608, at *1 n.1 (N.D. Ala. Dec. 19, 2017) ("Here, the parties do not dispute the authenticity of Ramsey's initially filed EEOC charge. Moreover, while Ramsey did not file his EEOC charge with this court, and his complaint does not reference the document, it is well-settled that prior to filing an ADA action in federal court, the ADA plaintiff must have 'timely filed' a charge with the EEOC. The court therefore concludes Ramsey's EEOC charge is "central" to his claim, and properly considered at the pleading stage without converting Greenbush's motion to dismiss into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." (internal citation omitted)). This exception extends to the right to sue letter. *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. Aug. 16, 2010) (finding consideration of exhibits attached to motion to dismiss, including EEOC right-to-sue letter, was proper because they were central to the plaintiff's claims and were undisputed and also finding that the Court could take judicial notice of documents because they were filed in the plaintiff's prior civil case). However, it is questionable whether the exception would extend to a settlement or release agreement. A plaintiff's Title VII or ADA claim clearly does not require a settlement or release agreement. Thus, a settlement or release agreement is not central to a plaintiff's claims and where, as here, such agreements were not attached to or referenced in the pleadings they cannot be considered on a motion for judgment on the pleadings. *See Neely v. City of Riverdale*, 2005 WL 8152651, at *4 (N.D. Ga. Oct. 18, 2005), report and recommendation adopted, 2005 WL 8152710 (N.D. Ga. Nov. 14, 2005) ("the Court finds that the General Release submitted by the Defendants

with their Motion to Dismiss is a matter outside the pleadings because Plaintiff neither referenced nor included the document in his Complaint").

Austal contends that the documents at issue can be judicially noticed by this Court. EEOC charges and related documents have been found to be public records of which a court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment. *See e.g. Hicks v. City of Alabaster, Ala.*, 2013 WL 988874, at *7 n.5 (N.D. Ala. Mar. 12, 2013) ("when considering a motion to dismiss, the court may take judicial notice of the contents of relevant public records, which include EEOC Charges and Right to Sue Letters" (citations omitted)). However, it is questionable whether the agreements at issue are part of the administrative record. The EEOC argues that the release document was not verified or otherwise authenticated and that Austal's report that it sent the release to the EEOC does not make it part of the EEOC's administrative record for purposes of judicial notice.

The EEOC argues that even if the Court takes judicial notice of the Release and Settlement Agreement, the Court should not assume that the statements contained in the documents are accurate and undisputed. The EEOC does not dispute that Cooper signed the agreements. (Doc. 31, p. 5 n.3). However, the EEOC argues that the Court does not have to take as true statements in the documents that the agreements were knowingly and voluntarily assented to after having had time to consider the releases and consult with an attorney, that the compensation was adequate, or that the agreements were not procured by duress. Since Austal

7

has the burden of proof on its waiver and release affirmative defense and the facts must be construed in favor of the non-moving party, the EEOC contends that this Court has no basis to find that Cooper knowingly and voluntarily assented to the agreements.

The Southern District of Florida has ruled that at the dismissal stage a release would not support a defendant's motion to dismiss. *Duvall v. Sun-Sentinel Co.*, 2013 WL 3310073 (S.D. Fla. July 1, 2013). In *Duvall*, the court reasoned as follows:

> At this stage of the proceedings, the Court is forced to side with Duval. Sun–Sentinel has not established that the release bars his Title VII claim in this case. While the release is framed broadly and, by its plain language, would seem to encompass Duval's employment discrimination claim, that is not the end of the matter. The Eleventh Circuit has cautioned that the waiver of remedial statutory rights under Title VII "must be closely scrutinized" under "the totality of the circumstances" to ensure that "the release [was] knowing and voluntary." *See Bledsoe v. Palm Beach Cnty. Soil & Water Conserv. Dist.*, 133 F.3d 816 (11th Cir.1998) (citation omitted). So, while Sun–Sentinel contends that the state court action and the release are subject to judicial notice, the Court cannot dismiss on the basis of those documents alone, no matter how broad the release's language. Instead, Eleventh Circuit case law instructs that the Court must make fact-intensive inquiries to determine whether, under "the totality of the circumstances," Duvall made a "knowing and voluntary" waiver of federal remedial rights. *See Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir.2007).

*Duvall*, 2013 WL 3310073, at *2. The Court finds the *Duval* court's reasoning to be persuasive. Extrinsic documents "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Because the LHWCA Settlement Agreement and the General Release were not mentioned in the complaint the Court

8

has no facts before it regarding the circumstances of their execution or of the veracity of the statements contained therein.[1]  Thus, the Court may be able to take judicial notice that the release documents exist and that certain statements are included in them but cannot take judicial notice of the truth of those statements.

The *Duval* case was brought by the charging party who claimed he did not know he was waiving any federal statutory claims and that the defendant essentially pulled a bait-and-switch by not expressly telling him so. *Duvall*, 2013 WL 3310073, at *2.  The current case is complicated by the fact that it is brought by the EEOC, not the charging party. Austal argues that the EEOC does not have standing to challenge the knowingness and voluntariness of Cooper's execution of the settlement and release since the EEOC was not a party to the agreements.

The Supreme Court discussed the effects of a settlement between a charging party and his employer in *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002).  In *Waffle House*, the Court found that an arbitration agreement signed by the charging party did not limit the remedies available to the EEOC. In other words, the EEOC was not required to arbitrate its claim even though the EEOC's claim was based on a claim by an employee who had agreed to arbitrate. However, the Supreme Court stated that the charging party's conduct may have the effect of limiting the relief that the EEOC may obtain in court. *Id.* at 296.  "If, for example, he had failed to mitigate his damages, or had accepted a monetary settlement, any recovery by the

---

[1] The Court notes that Austal's answer includes an affirmative defense that asserts that Cooper waived his claims but only refers generally to the release – stating only that Cooper executed a waiver in April 2015. (Doc. 12, p. 6, ¶ 2).

9

EEOC would be limited accordingly." *Id.* (citations omitted). "As we have noted, it 'goes without saying that the courts can and should preclude double recovery by an individual.'" *Id.* at 297 (quoting *General Telephone*, 446 U.S. 318, 333 (1980)). Nevertheless, the Supreme Court stated that it remained "an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek" as that issue was not before the *Waffle House* Court. *Id.* The *Waffle House* Court went on to state the following:

> Moreover, it simply does not follow from the cases holding that the employee's conduct may affect the EEOC's recovery that the EEOC's claim is merely derivative. We have recognized several situations in which the EEOC does not stand in the employee's shoes. *See Occidental*, 432 U.S., at 368, 97 S.Ct. 2447 (EEOC does not have to comply with state statutes of limitations); *General Telephone*, 446 U.S., at 326, 100 S.Ct. 1698 (EEOC does not have to satisfy Rule 23 requirements); *Gilmer*, 500 U.S., at 32, 111 S.Ct. 1647 (EEOC is not precluded from seeking classwide and equitable relief in court on behalf of an employee who signed an arbitration agreement). And, in this context, the statute specifically grants the EEOC exclusive authority over the choice of forum and the prayer for relief once a charge has been filed. The fact that ordinary principles of res judicata, mootness, or mitigation may apply to EEOC claims does not contradict these decisions, nor does it render the EEOC a proxy for the employee.

*Id.* at 297-98. While the *Waffle House* case is instructive and discusses at length the authority of the EEOC and the remedies it has available, the case does not answer the question whether the EEOC can challenge a charging party's settlement agreement, nor does it fully explain the effect such a settlement, if binding, would have on the EEOC's claim.

In the *Waffle House* case, the Supreme Court indicated that the EEOC does

10

not stand in the shoes of the employee in all instances. If the EEOC was found not to stand in the shoes of the employee with regard to a settlement or release agreement, that might limit its ability to challenge Cooper's agreements here since the EEOC is not a party to those agreements. However, the *Waffle House* case also instructs that we must look to the statutes that grant the EEOC's authority.

The EEOC's authority to bring suit arises from 42 U.S.C. § 2000e-5(f), which states that the EEOC may bring a civil action after a charge is filed with the Commission "if the Commission has been unable to secure from the respondent a conciliation agreement <u>acceptable to the Commission</u>."[2] 42 U.S.C. § 2000e-5(f)(1) (emphasis added).  Thus, the EEOC's right to bring a claim is based on its own determination of the adequacy of the respondent's response or resolution of the matter.  This express authority over the acceptability of the employer's conciliation agreement indicates that the EEOC is authorized to challenge a settlement by an employer. The EEOC is tasked with determining whether the resolution was acceptable; and, if it decides the resolution was not acceptable, is given the authority to bring suit. Thus, in the instant case, if the EEOC believes that the settlement agreement and release were not entered into knowingly and voluntarily and that the agreements did not adequately compensate Cooper, the EEOC should

---

[2] Section 2000e-5 is applicable to ADA cases through 42 U.S.C. § 12117(a) which states:
> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C.A. § 12117(a).

11

have authority to bring suit to address the employer's unacceptable resolution.

Austal cites three cases, none of which are in the Eleventh Circuit, to support its argument that the EEOC cannot challenge Cooper's settlement and release of his claims. In *E.E.O.C. v. CVS Pharmacy, Inc.*, 809 F.3d 335 (7th Cir. 2015), the Court found that Title VII did not give the EEOC broad powers to sue without engaging in conciliation or even alleging that the employer engaged in discrimination. In *CVS Pharmacy*, the agreement at issue was not the employer's conciliation to a charge that was filed, but a severance agreement that the employee entered into prior to filing a charge of discrimination. The employee filed a charge alleging he had been fired on the basis of his race and sex after entering into the severance agreement. *Id.* at 337. The EEOC dismissed the employee's discrimination charge but filed suit against the employer alleging that the employer had engaged in a pattern and practice of discouraging the filing of EEOC charges by offering the termination agreement to employees which included a waiver of claims. *Id.* at 338. The EEOC did not allege that the employer engaged in discrimination or retaliation. *Id.* The Seventh Circuit held that the district court correctly found that the EEOC's suit should be dismissed because the EEOC had not followed the pre-suit procedural requirements of Section 707(a) and because the EEOC did not allege any discrimination or retaliation.[3] Nothing in *CVS Pharmacy* indicates that if the charging party, after filing his charge, had entered into an agreement to release the

---

[3] The Court found there was no allegation of retaliation because "conditioning benefits on promises not to file charges with the EEOC is not enough, in itself, to constitute 'retaliation' actionable under Title VII." *CVS Pharmacy, Inc.*, 809 F.3d at 341 (citations omitted).

12

claims raised in his charge – that he was fired because of his race or sex - that the EEOC would have had no authority to challenge the agreement.

In *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987), an employee filed an EEOC charge against Goodyear for discriminatory promotion practices. The EEOC brought suit seeking injunctive relief and back pay for the charging party. *Id.* at 1541.  Goodyear subsequently promoted the charging party and the charging party signed a settlement agreement that, in consideration for having been promoted and for the employer's promise not to retaliate, released the employer from "any and all actions ..., including any claim for attorneys' fees," and requested that the EEOC dismiss the lawsuit. *Id.* at 1541-42.  The Ninth Circuit held that a charging party's settlement with her employer did "not moot the EEOC's right of action seeking injunctive relief to protect employees as a class and to deter the employer from discrimination." *Id.* at 1543.  However, the Court found that the public's interest in back pay for the charging party, "who has freely contracted away her right to back pay," was minimal and therefore that the EEOC's claim for back pay was moot. *Id.*  In a footnote, the Court noted the following:

> The EEOC also argues that the settlement does not bar Pettigrew from obtaining back pay—and so does not bar the EEOC from obtaining back pay on her behalf—because the settlement lacks consideration. The EEOC was not a party to the settlement and lacks standing to challenge Goodyear's rights under it. *Cf. Lorber Indus. v. Los Angeles Printworks Corp.*, 803 F.2d 523, 525 (9th Cir.1986) (corporation that is neither a party to nor agent nor beneficiary of contract lacks standing to compel contractual arbitration); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 841 n. 1 (9th Cir.1976) (in assessing standing to assert rights of others "we consider ... whether the person who brings the suit is a person harmed by the alleged wrong" (citing C. Wright, Law of Federal Courts § 13, at 36 (1963)).

13

*Id.* at p. 1543, n.2. [4] The Court notes that this case was decided prior to *Waffle House* and that the Ninth Circuit did not rely on the statements in the footnote for its holding and did not cite to any case law that directly supported those statements. The Ninth Circuit cited to general principles that one must be a party to or beneficiary of a contract or must be harmed by the alleged wrong to have standing. In the instant case it could be argued that the EEOC is harmed by the alleged wrong because its interest is the public's interest in employers resolving discrimination claims appropriately. The public's interest is harmed if an employer forces employees to settle their EEOC claims without giving the employees all of the appropriate information or allowing them a meaningful opportunity to seek legal counsel.

The last case Austal cites is *EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499 (9th Cir. 1990). In *Pan American*, the EEOC filed suit on behalf of two employees and any others who were similarly situated. *Id.* at 1500. The case went to trial but settled just before closing arguments. *Id.* at 1503. The proposed settlement agreement awarded damages to the 106 claimants in the case and provided injunctive relief. *Id.* Two former employees who had not previously been involved in the lawsuit filed motions seeking inclusion in the settlement class. *Id.* The district court denied their motions, finding that both of the employees had received notice of the lawsuit from one source or another and that the EEOC

---

[4] This Court presumes the Ninth Circuit meant to say the EEOC lacks standing to challenge Pettigrew's rights under the settlement.

14

enforcement action terminated their individual right to bring suit. *Id.* at 1502, 1503. The Ninth Circuit affirmed the district court's ruling, finding that the notification procedures adopted by the EEOC were sufficient to satisfy the requirements of due process and that the settlement did not prejudice their rights because their right to file individual claims was already barred upon the EEOC's filing of the lawsuit. *Id.* at 1507.  "The objectors had no right to participate in the EEOC's lawsuit because they expressed their interest too late in the day." *Id.* at 1509.  This Court finds that the *Pan American* case does not support Austal's argument. The case has nothing to do with the EEOC's rights to challenge a charging party's settlement. The individual objectors in *Pan American* had lost their right to assert their individual claims long before the settlement was proposed and did not have the statutory authority given to the EEOC to investigate and ensure that claims are appropriately resolved.

The parties have not presented (and this Court has not found) any binding caselaw that determines what right, if any, the EEOC has to challenge a charging party's settlement and release of his ADA claims. After considering the parties' arguments, the Court finds the EEOC has statutory authority to challenge Cooper's settlement agreement. Accordingly, the Court concludes that the LHWCA Settlement Agreement and the General Release cannot serve as a basis to grant judgment on the pleadings. Whether Cooper knowingly and voluntarily released his right to the individual relief the EEOC seeks here on his behalf will have to be resolved on summary judgment or at trial.

## III. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings (Doc. 26), is **DENIED**.

**DONE** and **ORDERED** this 20th day of May, 2019.

/s/ Callie V. S. Granade  
SENIOR UNITED STATES DISTRICT JUDGE
